## Grigg's Estate

26

28

30

34

*Federico F. Mauck,* of *Wright, Mauck & Hawes,* and *W. H. Lathrop,* for accountants.

HOLLAND, P. J., May 15, 1945.—

*Exceptions of Fidelity-Philadelphia Trust*
*Company, Trustee*

This exceptant filed seven exceptions on April 20, 1945, which may be considered together. They raise two objections. One, that its claim in the sum of $10,-574.63 was allowed as a general claim instead of a claim with a preference upon the proceeds of sale of Montgomery County and Philadelphia County real estate by virtue of a sale for the payment of debts under section 16 of the Fiduciaries Act of 1917. Two, that the auditing judge declined to allow interest beyond the date of death of decedent upon any deficiency against the insolvent fund not paid out of the claimant's security.

In the first place, the auditing judge misunderstood the exact facts. He assumed that this claimant had either foreclosed its mortgage or issued execution on the pledged real estate upon the judgment entered on the bond accompanying the mortgage. This was not

the fact, as it now develops, and the situation was clarified at the argument. This claimant, having a bond secured by a mortgage upon specific real estate, entered judgment on the bond during the lifetime of decedent, said judgment being entered in both Montgomery and Philadelphia Counties. Subsequent to the death of decedent the accountants sold this real estate and other real estate, both in Philadelphia County and Montgomery County by proceeding under section 16 of the Fiduciaries Act of 1917 for the payment of debts. Both of these funds, the proceeds of Philadelphia County real estate and of Montgomery County real estate, so sold, are specially accounted for. This claimant's judgment having covered the real estate in both counties, it is conceded that it has a priority on both funds. It is also conceded that its claim is correctly calculated, it having given full credit for the fair value of the real estate, subject to its mortgage, but it is contended by other creditors having a lien upon the same proceeds of the sales of real estate that interest should not be calculated beyond the date of the death of decedent, April 11, 1936. On the other hand, claimant contends that it is entitled to interest up to the date of sale of the real estate under the proceedings aforesaid.

The only question, therefore, is whether interest is properly calculated to the date of the death or to the date of the sale. It was conceded at the argument that if interest is allowed up to the date of the sale the correct amount of the claim is $10,574.63, but if the interest should be allowed only up to the date of the death of decedent there should be a deduction of $4,251.62 from this latter figure, and the claim should be $6,323.01.

Moreland Estate, 349 Pa. 374 (1944), is authority to the effect that a creditor in possession of pledged personal property as security for his debt is only entitled, upon the sale of the security, to claim interest

up to the date of the death of the deceased debtor, and can only present a claim against the insolvent fund, where the debtor dies insolvent, based upon this calculation of interest. Of course, this contemplates the presentation against the general fund of the difference between what he realized on the collateral and his whole claim, calculated as aforesaid, for the purpose of obtaining a pro rata dividend upon said difference. We have it, therefore, clearly established by this case that, where the security is personal property, the secured creditor can only take out of the proceeds of the sale of the security his principal debt, together with interest accrued to the date of the death of decedent.

This case is cited as authority that the same rule obtains when the security is real estate, as is the case now before us. But, we see this distinction. The process of sale of the security when it is personalty is different from the process of sale when the security is real estate, and the latter is governed by its own peculiar rules of law. The sale of the personal collateral or security is conducted by the creditor himself in any manner he sees fit or in accordance with his agreement as to the manner of sale with his debtor. The sale of the real estate security can only be accomplished by a judicial process which has its own peculiar rules. True it is that the basis of the security in both cases is that the creditor has a lien upon the property, but the method of realizing upon this lien and taking advantage of the priority afforded by his lien is different.

Section 16 (o) of the Fiduciaries Act of 1917 provides that sales of real estate under the provisions of this section "shall have the effect of judicial sales as to the discharge of liens upon the real estate so sold". It is argued that this part of the act provides only for the discharge of liens, and that this was the only incident of a judicial sale that was intended to operate and that all the other incidents of a judicial sale are not intended to be effective insofar as distribution of the

proceeds is concerned. With this we cannot agree. A judicial sale is simply the technical name for what is known popularly as a sheriff's sale. We have always regarded a sale under this section 16 as having the effect in all respects of a judicial sale or a sheriff's sale, not only as to the discharge of liens, but also as to distribution. We are of the opinion that the courts have regarded such a sale the same as a judicial sale or sheriff's sale, the only difference being that the orphans' court makes the distribution instead of the sheriff. Regardless of the solvency or insolvency of the debtor, where real estate is sold by the sheriff to satisfy a lien upon which execution has been had, interest has always been allowed up to the date of the sale. Allen, to use, v. Oxnard et al., 152 Pa. 621 (1893), is cited to this effect by claimant, but citations could be multiplied as this principle is so firmly established as to hardly need citation of authorities. We have here, therefore, a case where, upon this judicial sale, the lien of claimant has been divested and it has the first priority on the proceeds of the sale. In this case, as in all other cases of judicial sales, it is entitled to have its interest calculated up to the date of the sale, and we so hold. This claimant's claim is allowed in the sum of $10,574.63, as a prior claim upon the proceeds of these sales under section 16 of the Fiduciaries Act of 1917, both as to the Philadelphia real estate and the Montgomery County real estate. Accordingly, the seven exceptions of exceptant are sustained, and distribution is directed to be made with reference to this claim in accordance with this opinion.

### Exceptions of the United States of America

The United States of America, by Gerald A. Gleeson, United States Attorney, filed two exceptions which may be considered together. These exceptions were permitted to be filed nunc pro tunc, and were filed on May 4, 1945. Together they raise the objection that the

auditing judge refused to allow interest on the claim for income tax beyond the date of decedent's death. The Government contends that, according to the Federal statutes, all income taxes due at the date of death of decedent are due together with interest at six percent from the date of redetermination of deficiency (November 30, 1937) to the time of payment and are a priority. Exceptions nos. 1 and 2 are sustained, and the claim of the Government is allowed as a preferred claim in the sum of $1,689.55, with interest at six percent from November 30, 1937, until the date of payment.

### Exceptions of James M. Love, guardian ad litem and trustee ad litem

This exceptant, on April 23, 1945,. filed three exceptions. The first exception is to the awarding by the auditing judge of the rents of real estate to the creditors rather than to the trustees under the terms of the will for the benefit of the income beneficiaries under the will. As the auditing judge did in the adjudication, we adhere to the principle laid down in Shibe's Estate (No. 2), 50 D. & C. 246 (1944). Exception no. 1 is dismissed.

Exception no. 2 is to the auditing judge awarding the rents from real estate and the proceeds of sale of New Jersey real estate to creditors. The auditing judge found that, according to New Jersey law, which governed this real estate, New Jersey being the situs of the real estate, all real estate of any decedent is liable for the payment of decedent's debts. He therefore held that, this being the proceeds of the sale of real estate of New Jersey, and being accounted for, it should be appropriated to the creditors' claims, and he so awarded it. Upon consideration of the adjudication, we are of the opinion that the auditing judge was correct in his conclusion, and exception no. 2 is dismissed.

Exception no. 3 being automatically disposed of by our disposal of exceptions nos. 1 and 2, said exception no. 3 is dismissed pro forma..

And now, May 15, 1945, the adjudication is confirmed absolutely.