589 A.2d 242

TIOGA COAL COMPANY, and Robert Forepaugh

v.

SUPERMARKETS GENERAL CORPORATION.

Appeal of TIOGA COAL COMPANY.

TIOGA COAL COMPANY, and Robert Forepaugh,

v.

SUPERMARKETS GENERAL CORPORATION, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 9, 1991.

Filed March 14, 1991.

Reargument Denied April 30, 1991.

Joseph J. Carlin, Philadelphia, for appellant (at 1385) and appellee (at 1386).

Stuart J. Agins, Philadelphia, for appellant (at 1386) and appellee (at 1385).

Before WIEAND, MONTEMURO and HESTER, JJ.

MONTEMURO, Judge:

Cross-appellant, Tioga Coal Company ("Tioga"), brought this action in equity against cross-appellant, Supermarkets General Corporation ("Supermarkets"), seeking title by adverse possession to a strip of land, known as Agate Street, located within the boundaries of Supermarkets' property and adjacent to Tioga's property. After 11 years of litigation, including several appeals to this Court and our Supreme Court, Tioga was finally decreed the owner of the property by adverse possession. The parties cross-appeal

from orders denying their post-trial motions. The single issue raised by Tioga concerns the trial court's failure to award monetary damages to Tioga arising out of Supermarkets' use of the property during the period of litigation. Supermarkets raises two additional issues on appeal: (1) whether the trial court erred as a matter of law in setting forth the legal description of the property; and (2) whether the trial court erred as a matter of law in concluding that Tioga's use of the property was hostile and exclusive.

From 1948 until 1978, Tioga, a retailer in the fuel oil business, maintained a locked gate accessing Agate Street,[1] a strip of land running along the rear of Tioga's property. Throughout this period, Tioga used the strip of land for ingress and egress to its property and for storage of oil, coal, equipment, supplies and trucks. In 1978, Supermarkets removed a fence on the property and began paving Agate Street, anticipating use of the strip in connection with the Pathmark shopping center which Supermarkets was building on its property. Tioga brought this action to quiet title in the name of Tioga, and upon instruction from the supreme court, has been declared the owner of the property by adverse possession.[2]

First, we will address the issue raised by Tioga. As a result of settlement negotiations which took place at the start of this litigation, the parties agreed to the joint use of Agate Street pending the final resolution of the matter. N.T. January 10, 1989 at 4. Supermarkets thereafter completed the paving of Agate Street. Supermarkets and Tioga have used the paved strip free of dispute during the 12 year period of litigation. Tioga now seeks monetary damages from Supermarkets representing the reasonable rental value of Agate Street, compensation for the loss of the exclusive use and occupancy of the property, and the re-

1. Agate Street is a "paper" street which was never opened to the public.

2. For a more complete procedural history of this case, *see Tioga Coal Co. v. Supermarkets General Corp.*, 519 Pa. 66, 546 A.2d 1 (1988); *Tioga Coal Company v. Supermarkets General Corp.*, 289 Pa.Super. 344, 433 A.2d 483 (1981).

placement value of a fence which Supermarkets removed to pave the street. The trial court denied Tioga's request for damages.

Our scope of review in equity matters is limited. We will not disturb the chancellor's decree absent an abuse of discretion or an error of law. *Rosen v. Rittenhouse Towers*, 334 Pa.Super. 124, 482 A.2d 1113 (1984). "The test employed is not whether the judges of an appellate court would have reached the same result as the trial judge, who heard and saw the evidence, but whether a judicial mind, on due consideration of the evidence, could reasonably have reached the conclusion of the trial judge." *SHV Coal, Inc. v. Continental Grain Co.*, 376 Pa.Super. 241, 545 A.2d 917, 920 (1988), *appeal granted* 522 Pa. 595, 596, 562 A.2d 320 (1989).

■ Because we find that the trial court committed no error of law or abuse of discretion in denying Tioga's request for monetary damages, we affirm the decision of the trial court. The chancellor reasoned that Tioga was not entitled to damages because Tioga's use of the property was in no way hindered by Supermarkets, and because Supermarkets' use of the property took place under the belief that its title to Agate Street was good and proper. In addition, the record shows that Tioga received the benefit of the paving of the driveway, and Supermarkets paid the property taxes attributable to Agate Street during the extensive litigation period. Importantly, Tioga agreed to the parties' joint use of Agate Street pending the outcome of the case. Tioga benefitted from this agreement insofar as Tioga was spared the time and expense of litigating a preliminary or temporary injunction for the exclusive use of the property during the period of litigation. We do not agree that the chancellor erred in refusing the claim for monetary damages, as the decision rested upon reasonable grounds.[3]

3. At the hearing on damages, counsel for Tioga stated that Tioga was not seeking damages for removing the concrete driveway and other

█ Further, we find no abuse of discretion in the chancellor's refusal to allow recovery for the fence, as denial of damages rested in part upon the court's finding that the fence was owned by Supermarkets' predecessor in interest. In view of the finding that the fence did not belong to Tioga, we find that the chancellor's denial of the monetary award was reasonable. We have found no legal authority in conflict with the chancellor's decision.

█ Supermarkets' challenge to the legal description of the property rests on two theories: (1) the property description includes 10 more inches in width than the description of the property set forth in the complaint; and (2) the court failed to apply the "de minimis" rule.

A review of the record reveals that the precise description of the property was a factual issue which was hotly disputed by the parties. *See* N.T. January 20, 1989 at 3–8. When the parties failed to reach an agreement as to the property description, Tioga and Supermarkets submitted their respective proposed descriptions to the court. After consideration, the chancellor adopted Tioga's proposed description, reasoning:

> ... Supermarkets' description omitted a ten inch strip that exists between the former bed of Agate Street and Tioga's property. Tioga's description included this strip and therefore fit more precisely to Tioga's existing land. The only other option would have been to hire an independent surveyor which would only add more expense to this twelve year old case.

Trial Court Opinion, August 1, 1990 at 5.

It is well-settled that a court sitting in equity has broad discretion in framing its decree and granting relief tailored to the particular circumstances of the case:

> "Under the prayer for general relief, a decree which accords with the equities of the cause may grant any appropriate relief that conforms to the case made by the

structures which were permanently erected on property by Supermarkets. *See* N.T. January 10, 1989 at 8.

pleadings although it is not exactly the relief which has been asked for by the special prayer.... Under the prayer for general relief, the plaintiffs are entitled to such relief as is agreeable to the case made in the bill, though different from the specific relief prayed for." *Lower Frederick Township v. Clemmer,* 518 Pa. 313, 543 A.2d 502, 512 (1988), *quoting Meth v. Meth,* 360 Pa. 623, 625–26, 62 A.2d 848, 849 (1949). Here, although the specific prayer for relief in the amended complaint specified a forty foot wide tract of land, the complaint also included a prayer for general relief:

WHEREFORE, Plaintiffs pray this Honorable Court

\* \* \* \* \* \*

(c) such other relief that appears proper upon a final hearing in this matter.

Amended Complaint at 3–4.

At trial, Tioga proved that Tioga had taken possession of the ten inch strip of land between Tioga's property and Agate Street insofar as Tioga had constructed five large fuel storage tanks on the rear of its property and built a cinder block wall, surrounding the tanks, on the ten inch strip. Supermarkets conceded Tioga's ownership of this ten inch strip of land. *See* Adjudication of Doty, J., February 19, 1985 at 5–6. Tioga also proved that Tioga had taken possession of the forty foot wide Agate Street. There has never been any question in this case that Tioga sought title to the entire width of Agate Street, which both parties' exhibits reveal to be forty feet,[4] as well as the ten-inch strip of land between Tioga's property and Agate Street. At the hearing on this issue, counsel for Supermarkets claimed that although Supermarkets' proposed description had a different point of beginning, its description defined the same area as Tioga's description, including the ten-inch strip between Agate Street and Tioga's property. N.T. January 20, 1989 at 4–6. A close review and comparison of the parties' proposed descriptions shows that this is an

4. *See* D–12 and Survey and Plan of Property Made For Tioga Coal Co.

inaccurate characterization, as Supermarkets' description refers to a strip of a land thirty-nine feet, ten and seven-eighths inches wide. If this description includes the ten-inch strip, as Supermarkets so claims, then according to Supermarkets' description, Agate Street is only twenty-nine feet, ten and seven-eighths inches wide. This is obviously erroneous, as every exhibit in this case shows that the former Agate Street is forty feet wide.

Throughout this litigation, Supermarkets has been fully aware of the strip of property to which Tioga sought title, that is, the ten-inch wide parcel and the forty foot wide Agate Street, and Tioga has proven ownership of the entire parcel which is described in the chancellor's decree. Therefore, we find that the chancellor acted well within his jurisdiction in framing the relief to include Tioga's entitlement to the ten-inch strip of land between Tioga's property and Agate Street, as well as the entire bed of Agate Street.

■ Supermarkets' second challenge to the property description set forth in the chancellor's decree is based on the court's failure to apply the "de minimis" rule. This doctrine, as applied in cases involving requests for mandatory injunctions, holds that a court of equity will deny a request for the removal of a building or structure extending over a boundary line by a minimal distance and encroaching upon adjoining realty, where the expense, difficulty, and hardship of removal of the building would place a disproportionate burden on the defendant. *See Glinn v. Silver*, 64 Pa.Super. 383 (1916); *Heine v. Robinson*, 108 Pitt.L.J. 139 (1959); *Sciaretta v. Mitchell*, 20 Beaver L.J. 41 (1958); 28 A.L.R.2d 679.

According to the survey map prepared by Tioga, the rear wall of Supermarkets' shopping center encroaches upon Tioga's property by twelve and three-fourth inches. Supermarkets therefore claims that the chancellor should have considered the "de minimis" doctrine in defining the extent of the property subject to Tioga's adverse possession. A review of the record shows that Supermarkets did not raise the "de minimis" defense during the trial or urge the

chancellor to consider this doctrine during the hearing on the property description; it was not until the post-trial stage that Supermarkets raised this doctrine.

We find that it is unnecessary to consider whether the court erred in failing to apply the "de minimis" rule, as there is absolutely no indication in the record that Tioga seeks an injunction ordering Supermarkets to remove the rear wall of the building; nor did the trial court order the removal of the building. The cases cited by Supermarkets all involve situations in which a landowner sought a mandatory injunction directing the defendant to remove an encroaching wall, and the defendant raised the "de minimis" rule as an equitable defense. Thus, the question of whether the de minimis doctrine applies need not be decided and is not before us.

█ Finally, Supermarkets challenges the trial court's findings regarding the exclusivity and hostility of Tioga's use of the property under the doctrine of adverse possession. These issues were fully litigated before this Court and the supreme court. In *Tioga v. Supermarkets General Corp.*, 519 Pa. 66, 75 n. 4, 546 A.2d 1, 5 n. 4 (1988), the supreme court upheld the Chancellor's findings as to exclusivity, openness, notoriousness and continuity of possession. The court further held that hostility will be implied in cases, such as this one, where all other elements of adverse possession have been established. *Id.* Despite the supreme court's clear rulings on these issues, Supermarkets urges us to reconsider these allegedly flawed decisions. "It is hornbook law that issues decided by an appellate court on a prior appeal between the same parties become the law of the case and will not be reconsidered on second appeal." *Commonwealth v. Tick, Inc.*, 431 Pa. 420, 427, 246 A.2d 424, 427 (1968), *citing Delaware River Port Authority v. Penn. Public Utility Comm'n.*, 408 Pa. 169, 182 A.2d 682 (1962); *Ondovchik v. Ondovchik*, 421 Pa. 20, 218 A.2d 578 (1966). Thus, the supreme court's determinations made in the prior appeal have become the law of the case, and we will not reconsider these issues.

In view of the foregoing, we affirm the decree of the trial court.

Decree affirmed.